## T. & P. RY. CO. v. MARGARET E. O'DONNELL.

### SUPREME COURT, TYLER TERM, 1882.

*Verdict—Evidence—Improbable statements.*—Although the weight of evidence tended to a different conclusion from that expressed in the verdict, still the judgment will not be reversed on that ground where, from circumstantial evidence and improbable statements of the only eye-witnesses to an occurrence, the jury might base their conclusion.

Opinion by Gould, C. J.—It is not proposed to discuss the various propositions of counsel for appellant, based on objections to the charge as given and in the refusal of charges asked. In so far as these propositions deny that a railroad company owes any duty to persons on its track, they assert a principle which this court has heretofore refused to adopt, and which is believed to be generally, if not universally, denied by the court when applied to the case of an infant trespasser. (H. & T. C. Ry. Co. v. Sympkins, 54 Texas, 620; Pierce on Railroads, p. 332, et seq.; 2 Thompson on Neg., p. 1180, et seq.)

In so far as they assert that a railway company is only required to use ordinary care to discover persons on its track, they but reiterate what was sufficiently embodied in the charge. · The objection that the charge is upon the facts of the case, or that it assumes facts improperly, is not borne out by the record. Taking in connection the charge of the court and the instruction asked by defendant and given, it appears to me that the defendant has no just or legal cause of complaint as to the charge. If the court ought properly have explained the meaning of the expression "proximate cause," as used in the charge, the defendant is not in a condition to avail itself of a mere defect or want of completeness, which it should have sought to remedy at the time, by asking an appropriate instruction.

We remark that throughout the charge of the court, the negligence of the mother is imputed to the infant plaintiff. As presented to us, the case requires no expression of opinion on this mooted legal question, nor on the question how far the negligence of a person left by the mother in charge of the infant, would also be imputed to the infant. The appellant got the full benefit of a charge going as far as it asked as to the effect of contributory negligence by the mother, and the court was not asked to go further and instruct the jury to impute to the child the negligence of its aunt, who was left in charge of the child by the mother.

This brings us to the question of fact, whether the verdict is clearly contrary to the evidence.

If the evidence of the engineer and fireman be accepted as strictly truthful and accurate accounts of the outlook kept by them, and of what they saw and did, counsel for appellant say that it shows everything to have been done which they ought to have done, and that nothing was done which ought to have been left undone. It is urged that the evidence of these witnesses must control the case; that the jury was bound not to disregard it. There seems to be no doubt that each of these men, after they discovered the child on the track, acted promptly and bravely in making every effort to save it, which either duty or manhood could require. In our opinion, however, there was evidence, positive and circumstantial, from which the jury might have inferred that these servants of the company had failed to discover the child in time, because of their own want of proper watchfulness, and that in their anxiety to exculpate themselves from responsibility for an accident which they deplored, they had, whether knowingly or not, failed to

give the facts correctly. There is evidence of statements by each of these witnesses inconsistent with material facts of their testimony. Finigan, the fireman, says he first saw the child crawling up the ties, and at the same time, he says, Holmes, the engineer, had discovered it. Holmes says he only recognized it as a child when it was sixty yards distant. Finigan denies that he was at the time firing up the engine, or that he told Mrs. O'Donnell that he was firing up, or he could have seen the child.

Mrs. O'Donnell testifies that he did tell her that he was firing up at the time, or he would have seen the child sooner.

Holmes says he first saw it close to, but off the track, and supposed it to be a hog or a pig.

Dr. Rooks testifies to his recollection, or impression, that Holmes told him he first saw the child on the track, and thought in was a hog or bunch of rags. Holmes denies saying this, but says he might have said he saw the child on the side of the track, and in the ditch, about two hundred and fifty yards distant.

There is quite an improbability in the statement of Holmes that the child was in the ditch and crawled out of the ditch on the track. Whether he meant it or not, he is made to say that the child, when he first saw it, was in the ditch. The evidence is that the ditch was two feet deep, and it seems improbable that a child eighteen months old crawled out of a ditch of that depth, as described.

The inference, from the evidence of Holmes and Finegan taken in connection, is that nothing was seen until after the train, traveling at the rate of ten or twelve miles an hour, had passed the east end of a switch two hundred yards from the house, and not more than one hundred and seventy or one hundred and eighty yards from where the child was killed, and still less from the point where the train was when Holmes saw it standing upon the track clapping its hands. The few seconds that intervened—not, at most, exceeding two thirds of a minute, according to the rate the train was traveling—afforded scant time for a child of that age to climb out of such a ditch, across the ends of the ties, on to the track, and to stand up there.

Indeed, according to the testimony of its aunt, but four or five minutes had elapsed after the child was in the house until it was brought in to her after the injury; and the entire time seems short enough to have fully occupied the child in making its way from the house down the steps, across the plank walk, and then down the

track in the direction its mother had gone, to where it was run over on the track. Its footsteps were plainly traced down the center of the railway track twenty or twenty-five yards, to within a few feet of where the blood showed the accident to have happened. No tracks were found outside or in the ditch.

If, in view of these circumstances and the testimony tending to show contradictory statements by the fireman and engineer, and especially of the fact that there was nothing to prevent them from seeing along and on the track, which was straight, and the view wholly unobstructed, the jury believed that the failure sooner to discover the child was caused, not by its being in the ditch or on its hands and knees close to the track, but by the want of proper watchfulness in these servants of the company, it cannot be said that there was no evidence on which to base their conclusion.

Their verdict having been approved by the district judge, who heard all the testimony, we are unable to say that it is clearly wrong. Although we may think that the weight of the evidence tended to a different conclusion, and we would have been better satisfied with a different verdict, the majority of the court do not feel at liberty to reverse the judgment on that ground.

As to the amount of the verdict, while we think it large, we do not think it such as to justify our setting it aside. The matters to which the charge of the court invited the attention of the jury in estimating the amount of damages were proper for their consideration. That the permanent loss of her arm, amputated, as it was, at the shoulder joint, would reduce her capacity to earn money, would seem to be an inference which the jury could draw for themselves, without the aid of witnesses. We see nothing in the charge on this point calculated to mislead. Having found no error justifying a reversal, it is ordered that the judgment be affirmed.

### DISSENTING OPINION OF BONNER, J.

I feel constrained to dissent from the decision of the majority of the court in this case.

It is shown that the mother of the child voluntarily resided at the place at which the accident happened, and that it was within a few feet of the track of the road. That she knew of the approaching train, and recollected at the time that the child might be injured. Under the circumstances, great care was due on the part of the mother. But without expressing an opinion whether the contributory negligence of a mother should be imputed to a child of such

tender years as the plaintiff, I, however, think that the judgment should be reversed on other grounds.

There is a great preponderance of evidence against the verdict. It cannot be questioned but that the plaintiff was wrongfully on the track, a fact which the employees on the train were not bound to anticipate would happen further than to use ordinary care to discover possible danger. The train was running at a reasonable rate of speed. The only eye-witnesses to the fact, the engineer and fireman, swore positively that they were at their posts of duty and on the lookout, and that as soon as they saw the danger they used extraordinary exertions to avert it and save the child, even at the risk of their own lives. That nothing was left undone which they could have done. The circumstantial evidence does not necessarily conflict with their positive testimony, which, under the circumstances, should be entitled to very great weight. The evidence shows that the child's tracks were obliterated at the place where the engine came in contact with her.

In cases where there is a great preponderance of evidence against the verdict, I do not understand the true rule to be that the verdict should be upheld, because, perchance, there might be some evidence upon which the jury might have found, but that the testimony to support the verdict should be so reasonably certain and sufficient as to show that the jury did not err.

I do not think that the verdict and judgment in this case were warranted by the testimony. I am further of the opinion that, under the circumstances, the verdict was excessive.