# CARMEN GONZALEZ

*v.*

# SAN JUAN LIGHT & TRANSIT COMPANY.

San Juan, Law, No. 662.

1. The rule laid down in Munich v. Valdés, 3 Porto Rico Fed. Rep. 255, that it is no part of the duty of a court to interfere or set aside the verdict of a jury, when it cannot be said that it is against the decided weight of the evidence, or the result of mistake, passion, or prejudice, followed and approved.

2. When the evidence is such that the jury, on questions of negligence and contributory negligence, could well have found either way, the court will not set aside the verdict and grant a new trial. Where the facts constituting liability have been well proved by plaintiff but positively denied by defendant, still it is the province of the jury, and not the court, to say which side preponderates. The case should therefore be submitted to the jury under proper instructions as to the burden of proof. Cabrera v. San Juan Light & Transit Co. 3 Porto Rico Fed. Rep. 222, and Delgado **v.** Insular Line, 4 Porto Rico Fed. Rep. 310 followed.

Opinion filed March 26, 1910.

*Messrs. Henry L. Lyons, M. Olmedo, Hartzell & Rodriguez Serra,* attorneys for plaintiff.

*Mr. H. F. Hord,* attorney for defendant.

Gonzalez v. San Juan Light & T. Co.

RODEY, Judge, delivered the following opinion:

This case is before us on a motion for a new trial. It is a suit by a young girl, seventeen years of age, who sues by her father, on account of a personal injury to her, which she alleges occurred through the negligence of the servants of the defendant street car company. The case was tried November the 30th, and December 1st, 1909, before a jury, and a verdict was rendered for the plaintiff in the sum of $5,000.

Counsel for the respective parties were heard at length orally pro and con on this motion. In addition, plaintiff's counsel has filed a 16-page argument and brief of authorities. Counsel for defendant, although given ample opportunity, and although his time was several times extended for that purpose, and he was requested to file a brief, has failed to do so.

The grounds set out in the motion for a new trial are about as follows:

1. That the verdict is contrary to the weight of the evidence.

2. That plaintiff was guilty of contributory negligence.

3. That plaintiff did not prove on the trial that she had sustained any damage by reason of the accident complained of.

4. That the verdict and judgment are contrary to law, because the court permitted plaintiff to recover for injury to her feelings and for mental and physical suffering, without proving any actual damage to have been sustained by her.

We have a distinct recollection of the trial, and of the proofs, and of the appearance, manner, and testimony of all of the witnesses in the case, and, in addition, have just carefully read a complete transcript from the stenographer's notes of all of the evidence and of our own instructions to the jury.

Gonzalez v. San Juan Light & T. Co.

Plaintiff proved,—and it was not disputed,—that the accident out of which the injury arose, occurred between 9 and 10 o'clock on Sunday evening, the 18th of July, 1909. That she was a passenger on one of defendant's street cars, and was proceeding from Santurce into the city of San Juan, and intended to alight at the stop at the crossing of Tanca street. She contends, and in this she is supported by four witnesses besides herself, who testified positively to the facts, that as the car stopped slightly before reaching the street in question, she arose from her seat in company with others, and, walked out forward to the platform of the car, while the car was standing still, and proceeded to alight. That she had stepped down from the actual platform to the step attached to it, and that while she had one foot in the air in thus stepping down to the sidewalk, the car was started with a violent jerk that threw her to the ground, she striking the sidewalk or its curb, or some object on the sidewalk, violently, and rolling in over the curb towards the car so that her right foot was caught under one of the wheels. The evidence was conflicting as to whether plaintiff screamed as she fell, or whether she became unconscious when she struck the walk or only after her foot was crushed. The proofs showed that the first wheel of the first truck did not touch her, but that either the second wheel of the first truck or the first wheel of the second truck caught her foot, and either pushed it along on the rail a short distance or else simply crushed it against the rail, but that the wheel did not actually roll entirely over her foot, because the car was stopped almost instantly. It further showed that in order to extricate her foot, the motorman was obliged to reverse the current, and move the car backwards up the grade a little.

With equal positiveness four witnesses for the defense, besides

Gonzalez v. San Juan Light & T. Co.

the conductor and the motorman of the car, testified that the accident did not occur in this manner at all, but that plaintiff arose in the car while it was still in motion as it was approaching, and some distance before it had reached, the stop in question, but while it was slowing down for the stop, and proceeded to the platform, and that in spite of the efforts of the motorman to stop her, recklessly jumped off while the car was thus in motion, and that because of this she lost her balance and tripped and fell, and was injured in the manner stated. It can thus be seen the evidence is in direct conflict as to whether the car was in fact stopped before plaintiff thus attempted to alight. It further showed that she was in the hospital about three and a half months, and that she suffered considerably, being attended by two physicians, who performed operations on her foot. She testified that she did some work at sewing, and that that occupation required the use of her foot. Two other physicians, who had either attended her or examined her injury, testified in detail that her injury was, and is, very painful, and is very severe. That the bones of her ankle are broken away, and that she had serious ulcers that would require a long time to heal, and will require skin grafting, etc. That her foot would have to be broken once or twice again, and a lot of massage indulged in, with a view to induce some movement in the ankle joint, and with a view to seeing whether she would ever be able to use her foot. At the time of the trial, which was some four and a half months after the accident, the foot was utterly useless to her for purposes of walking. One of the physicians testified that if she is not well treated the foot will remain permanently anchylosed, —that is, that there will be no motion in the joint,—and that it would be useless for walking, except with great difficulty and

Gonzalez v. San Juan Light & T. Co.

with a limp, and would probably always be painful, but that, if well treated, she could get some slight motion, but never enough to enable her to walk without a limp; that she could never dance or use it as a girl of her age would want to, and that in order to bring about the best results it would be necessary to put her under chloroform and move the joint forcibly, breaking up the adhesions in the joint. That this would have to be repeated three or four times, probably, in order to secure any result and give the joint any motion of value; and that to cure the ulcers it would be necessary to do skin grafting, which might have to be repeated several times, and that between operations she should have massage from some person skilled in such work, and that even with the best of treatment the result would never be to restore any satisfactory use of her foot. Another physician testified that her foot was very seriously injured, that the ankle joint and that part of the foot from the ankle down along the inner side was all torn,—all destroyed. That when he saw it it was beginning to heal, but that this was several days after the injury; that the bones forming the ankle, especially the tibia, were destroyed; that what the physicians call the inner maleolus, which is the piece of bone which forms the inner part of the ankle joint, was knocked off or destroyed. That a few pieces of the other bones had been taken off also,—small pieces. That the tendons which go to the foot,—to the sole of the foot along the inner side,—were destroyed and torn. That there was a wound on the outside of the foot, but not so severe as the one cn the inner side, etc. That the ankle joint, which is formed by the two big, long bones with those beneath, had been destroyed, and that the ends of the bones that form the joint are now pasted or grown together, so that the motion which those

Gonzalez v. San Juan Light & T. Co.

bones should have is very limited; that the ankle joint is so stiff that it is anchylosed, due to this crushing of the bones at the joint. That the foot is permanently disabled, and that later on the question will arise whether it would be better to leave the foot there or take it off and put on an artificial limb; that this cannot be determined for a number of months, or perhaps a year; that the foot is not improving a great deal as to motion, and as the joint is lost, he does not see how it can improve any in that way; that the ulcers are indolent ones, and that it will take a very long time to heal, and a great deal of treatment.

At the end of plaintiff's case she appeared to have a perfect right to recover as the evidence then stood, but when the evidence for the defense had been introduced, it was difficult to say which side the jury would believe, as there was a square conflict. After now carefully examining our instructions to the jury, we are satisfied that the important questions of fact were properly submitted to them. The real question to be decided was as to whether this young girl attempted to alight from that street car while it was in motion, and by so doing took the risk of injury, for which, of course, she could not recover. The verdict shows the jury believed plaintiff's witnesses, and that they did not give credence to those of the defense. They saw the witnesses on the stand, and judged of their truthfulness, or their lack of it, from their mannerisms, their manner of testifying, their motives, interest, and all other surrounding circumstances, and surely, under what is now a well-settled principle, it is no part of the duty of the court to invade their province in that regard, to set their verdict aside, when it cannot be said that they arrived at it because of undue influence, passion, mistake, or prejudice. The trial throughout was conducted in an exemplary

manner by counsel on both sides, and we saw nothing that would lead us to believe they did not fairly and impartially consider all the evidence, facts, and circumstances in making their finding of fact that resulted in their verdict.

We stated in Munich v. Valdés, 3 Porto Rico Fed. Rep. 255, that "it is no part of the duty of a court to interfere with or set aside the verdict of a jury when it cannot be said that it was the result of mistake, passion, or prejudice, simply because the court might be of opinion itself that the verdict is rather too high." We also stated in Cabrera v. San Juan Light & Transit Co. 3 Porto Rico Fed. Rep. 222, in passing upon a motion for a new trial, that was decided in its favor, that, "when the evidence is such that the jury, on the questions of negligence and contributory negligence, could well have found either way, the court will not set aside the verdict and grant a new trial." See our decision in Paitel de Morsommé v. Yauco, 3 Porto Rico Fed. Rep. 411, and Guzman v. Herencia, 3 Porto Rico Fed. Rep. 472, also in Delgado v. Insular Line, 4 Porto Rico Fed. Rep. 310.

The Supreme Court of the United States in Kreigh v. Westinghouse, C. K. & Co. 214 U. S. 249, 53 L. ed. 984, 29 Sup. Ct. Rep. 619, as recently as April 27th, 1909, held that "questions of negligence do not become questions of law except where all reasonable men must draw the same conclusion from the evidence; nor should a case be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts which the evidence tends to establish." Citing Gardner v. Michigan C. R. Co. 150 U. S. 349, 37 L. ed. 1107, 14 Sup. Ct. Rep. 140. Previously, in McDermott v. Severe, 202 U. S. 600, 50 L. ed. 1162, 26 Sup. Ct. Rep. 709, the same rule had been

laid down, and it was further stated: "And if from the facts admitted, or conflicting testimony, such men [fair-minded jurors] may honestly draw different conclusions as to the negligence charged, the question is not one of law but of fact, to be settled by the jury under proper instructions." It was further held in this latter case, at page 611, as to mental suffering, that "where such mental suffering is a direct and necessary consequence of the physical injury, we think the jury may consider it."

This, we think, disposes of the first and second grounds for a new trial. As to the third and fourth grounds, that plaintiff did not prove that she had sustained any damage, and that the court by its instructions permitted her to recover for injuries to her feelings and for mental and physical suffering, without proving any actual damage, we are somewhat astonished at such a contention. Surely if a person, through the negligence of another, loses a limb, or has some other grave personal injury inflicted upon him or her, the very fact that the injury was thus negligently inflicted is sufficient to entitle such a plaintiff to damages. In Black's Accident Cases, Sec. 215, what we believe is the true rule in this regard is laid down as follows: "The plaintiff, having proved that his arm was mangled and crushed, no further evidence that he suffered pain is necessary to justify the jury in making the pain suffered an element of damage, or that his injury will impair his ability to pursue his calling as a brakeman." Citing Chicago, B. & Q. R. Co. v. Warner, 108 Ill. 538, and further, that: "Evidence is unnecessary to show that the loss of an arm reduces the plaintiff's capacity to earn money." Citing Texas & P. R. Co. v. O'Donnell, 58 Tex. 27.

During the past three and a half years we have had quite a few cases before us in this court, wherein this same street car

Gonzalez v. San Juan Light & T. Co.

company was defendant, and are by this time pretty well posted as to conditions that surround it. On the whole, it has suffered remarkably few verdicts against it, based on the negligence of its employees, considering conditions. We think this fact speaks well for the fairness of juries in this district. In the case at bar, the conductor and motorman, as could be plainly seen, were not of that intelligent class of street car help that they should have been. The evidence showed, and it was not disputed, that these two particular employees actually demurred about backing up the car so as to release this girl's foot, until they were finally forced to do so by a policeman and a bystander, who said that they would give the order to do so on their personal responsibility.

It may have been that in this particular case this defendant was not guilty of any negligence, and that this girl actually did arise from her seat, and negligently jump off of that car while it was in motion; and it is to be regretted, if such is the fact, that defendant appeared to be unable to satisfy the jury of it against the positive evidence to the contrary of four witnesses and the plaintiff herself. Practically an equal number of witnesses swore directly opposite to each other as to this one controlling fact, and it surely is not the province of the court, but is the province of the jury, to say which side told the truth. They certainly believed her side of the story, as they had a right to do. We cannot say that the verdict is against the weight of the evidence, nor that the verdict on the whole is too high.

In cases not involving any constitutional question, or national statute, or treaty there is no appeal from the decision of this court when the verdict or judgment does not exceed the sum of $5,000, exclusive of interest and costs. We therefore keenly

feel our responsibility in such cases, and have been extremely careful in our scrutiny of the grounds alleged as reasons for new trials. However, in this particular case, after having given the matter serious and careful consideration, and after an examination of all of the evidence and our own instructions, we are unable to see that we have any power, without depriving plaintiff of her legal rights, to set aside this verdict. Therefore, the motion for a new trial will be denied, and an order to that effect will be entered.