BEAUMONT COTTON OIL MILL CO. et al.
v. HESTER. (No. 8932.) *

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 30, 1918. On Rehearing, Jan. 18, 1919.)

1. CORPORATIONS ⬤═◎503(2)—ACTION AGAINST VENUE—PLACE OF ACCRUAL OF RIGHT.

Petition held not to state primarily a suit for rescission of contract whereby defendant corporations were to deliver to plaintiff peanut hulls, weights and grades "guaranteed" at destination, but a cause of action sounding in damages arising out of breach of alleged contract occurring in county of destination, so that cause of action arose there, within Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, § 24, as to suits against private corporations being com-

menced in any county where cause of action, or any part thereof, arose.

**2. CORPORATIONS ⬛⟲503(1)—ACTION AGAINST —VENUE—ENTIRE CAUSE.**

If the courts of J. county had venue and jurisdiction to try cause against corporation arising by reason of alleged breach of guaranty as to quality or grade of peanut hulls shipped, the venue for the entire cause of action, with its several items of damages, was in said county.

**3. ACTION ⬛⟲1 — NATURE AND ELEMENTS— "CAUSE OF ACTION."**

A "cause of action" cannot exist without the concurrence of a right, a duty, and a default; or, stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused (citing Words and Phrases, Second Series, Cause of Action).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action.]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by S. T. Hester against the Beaumont Cotton Oil Mill Company and another. From judgment overruling plea of privilege, defendants appeal. Affirmed.

S. C. Padelford, of Cleburne, and A. E. Hampton, of De Leon, for appellants.

Walker & Baker, of Cleburne, for appellee.

BUCK, J. The disposition of this appeal turns on the question of whether or not the trial court correctly overruled defendants' pleas of privilege to be sued in the counties of their respective residence. It was alleged in plaintiff's petition that the defendant the Beaumont Cotton Oil Mill Company resided in Jefferson county, and the De Leon Peanut Company resided in Comanche county, while the plaintiff resided in Johnson county, in which county the suit was brought. The defendants are corporations. Plaintiff alleged that defendants employed a brokerage company to sell peanut hulls from the factory of the De Leon Peanut Company, and that the defendants through said brokerage company contracted to sell to plaintiff 150 tons of "factory run" hulls at the price of $10.25 per ton f. o. b. De Leon, Tex., on the following terms: Sight draft, bill of lading attached, free of exchange, and shipment to be made during May, allowing the seller privilege of finishing contract first half of June, if necessary, and the weights and grades guaranteed at destination. The memorandum of the contract prepared by the broker was made in triplicate, and defendants indorsed on one of the copies sent them the following:

"Accepted, 5—10—17. Beaumont Cotton Oil Mill Co., by De Leon Peanut Co., by W. P. Luse."

Plaintiff indorsed an acceptance on the copy sent him and delivered it to the defendants. The petition alleged that W. P. Luse was the duly authorized agent of both defendants to act for them in the capacity stated. The petition further alleged that, by virtue of the written contract aforesaid the defendants bound themselves to sell to plaintiff 150 tons of factory run hulls at the price stated, f. o. b. at the place stated, and to attach sight drafts to bills of lading, free of exchange on the plaintiff at Cleburne, Johnson county, Tex., and further guaranteed at destination, which was Cleburne, the weights and grades of said hulls.

It was further alleged that the defendants shipped 13 car loads of commodity, purporting to be peanut hulls, and shipped said 13 cars to their own order, and attached the bills of lading to drafts on the plaintiff at Cleburne, Tex.; that eight of said drafts, aggregating $973.55, were paid by plaintiff, and in addition $237.60 freight on said hulls, and also demurrage charges, caused, as alleged by plaintiff, by the defendants' failing to send bills of lading and drafts promptly with shipment. It was further alleged: That when plaintiff opened the cars he found the commodity not to be factory run hulls, such as defendants had contracted to sell him, but a mixture of peanut hulls, dirt, and trash. Plaintiff was engaged in the manufacture of feedstuffs and expected to use the peanut hulls bought for such purpose. That the mixture actually shipped plaintiff could not be used for said purpose and was useless and worthless to him. That plaintiff when he discovered the condition and character of the commodity shipped promptly advised the defendants and asked them to take possession of the cars and their contents and refund to him the amount paid therefor, but said defendants refused to do so and plaintiff, not having any place in which he could unload or store said commodity, was compelled to leave same on the cars, and that further demurrage charges had accrued, for which he sought recovery.

Plaintiff further alleged that factory run hulls, such as defendants contracted to sell him for $10.25 per ton, were worth at the time of the suit $15.25 per ton, and that plaintiff had sustained damages in the sum of $750 by reason of the failure on the part of defendants to deliver the kind and character of hulls sold plaintiff. Plaintiff further alleged: That the defendants had shipped to him, at Cleburne, five additional cars, containing a mixture of peanut hulls, dirt, and trash, and that upon his refusal to accept said cars, as in part compliance with the contract of the defendants, said defendants notified him that they expected to sell the contents of the five cars and hold him responsible for any loss, between the contract

⬛⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

price and the price which they might be able to realize therefor. That such claim on the part of defendants was not valid or legal, and hence plaintiff prayed that on hearing he have judgment for his damages, consisting of the amount paid on the eight drafts aforesaid, the demurrage charges, the loss by reason of the increased market price of factory run peanut hulls, and that the purported claim of the defendants on the five cars be canceled.

[1] Appellants urge that this is a suit for a rescission of the contract alleged to have been made between the plaintiff and defendants, and that as to such a suit it cannot be reasonably claimed that any part of the cause of action arose in Johnson county, and that the pleas of privilege of the defendants to be sued in the counties of their residence should be sustained. We do not so construe the cause of action pleaded. We think the allegations of the plaintiff's petition allege a cause of action sounding in damages arising out of a breach of contract alleged. Said contract contained, as shown by the statement of facts, substantially, the elements pleaded in plaintiff's petition, and, among other terms it required that weights and grades be guaranteed at destination by defendants. Article 1830, § 24, vol. 2, Vernon's Sayles' Tex. Civ. Stats., provides that—

"Suits against any private corporation, association or joint-stock company may be commenced in any county in which the cause of action, or a part thereof, arose."

[3] We think that, under the contract pleaded, defendants guaranteed at Cleburne the weights and grades of the peanut hulls, and that a failure of said hulls on their arrival at Cleburne to measure up to the grade of the commodity contracted to be sold constituted a breach of the contract on the part of the defendants, and that said breach occurred in Johnson county. It is said that a "cause of action" cannot exist without the concurrence of a right, a duty, and a default; or, stated differently, an obligation must exist upon one party in favor of the other the performance of which is refused. W. & P. vol. 1, p. 599; Bruner v. Martin, 76 Kan. 862, 93 Pac. 165, 14 L. R. A. (N. S.) 775, 123 Am. St. Rep. 172, 14 Ann. Cas. 39. Plaintiff had the right under the contract to demand that defendants should ship to him factory run peanut hulls; it was the duty of defendants to ship said kind of hulls, in which duty defendants were alleged to have defaulted. Defendants' guaranty or duty in this respect was to be fulfilled or performed at Cleburne. If they failed to fulfill their contract in this respect, we think the breach occurred at Cleburne; hence, we hold that a part of the cause of action arose in Johnson county. See Rhome Milling Co. v. Cunningham, 171 S. W. 1081; Kell Milling Co. v. Bank of Miami, 155 S. W. 325; Hous-

ton Rice Milling Co. v. Wilcox, 45 Tex. Civ. App. 303, 100 S. W. 204; Cuero Cotton O. & M. Co. v. Feeders' Supply Co., 203 S. W. 79; Silo Co. v. Alley, 191 S. W. 774. In Doughty v. Funk, 15 Okl. 643, 84 Pac. 484, 4 L. R. A. (N. S.) 1029, it is said:

"We cannot, therefore, in determining the meaning of the phrase under consideration, hold that a cause of action has arisen only when the remedy and the right occur at the same time. But we do hold that a cause of action arises when the obligation was created which gave rise to a right of action as soon as such right accrued thereon."

In the instant case we think the cause of action, if any, arose when defendants breached their contract, expressed in the term "guaranteed," that the commodity should conform upon its arrival at Cleburne to the quality stated in the contract.

[2] We need not determine whether the accrual of the demurrage charges at Cleburne, due to the alleged failure of defendants to promptly forward the bills of lading with drafts attached constituted a cause of action arising in Johnson county; for if the courts of Johnson county had venue and jurisdiction to try the cause of action arising by reason of the alleged breach of guaranty as to the quality or grade of the peanut hulls shipped, the venue of the entire cause of action arising, with its several items of damages, was in Johnson county. See Keller Co. v. Mangum, 161 S. W. 19; Middlebrook et al. v. Bradley Mfg. Co., 86 Tex. 706, 26 S. W. 935.

As to whether the defendants, or either of them, executed the contract, for the breach of which suit was brought, is a question which we are not in this appeal required to determine. The appeal is merely from the judgment overruling the plea of privilege. Plaintiff alleged that the contract was executed by W. P. Luse, who was authorized to act for and bind both defendants. As to whether such allegation was supported by the facts is an issue to be determined upon the trial of the case on its merits. Hence we overrule those assignments in appellant's brief in which it is urged that, because the defendant the Beaumont Cotton Oil Mill Company is not mentioned in the contract as the seller, said company is not bound, as shown by the acceptance set out hereinabove. The Beaumont Cotton Oil Mill Company signed the contract "by the De Leon Peanut Company, by W. P. Luse." It was alleged in the petition that the peanut company was a subsidiary of the Beaumont Cotton Oil Mill Company, and the latter owned the stock or controlling part of the stock of the peanut company, and that the contract was made for the joint use and benefit of both parties, and that W. P. Luse had authority to represent and bind both parties.

All assignments are overruled, and the judgment is affirmed.

## On Rehearing.

Appellants have filed a lengthy motion for rehearing, supplemented by an equally lengthy written argument, and we have carefully read them and given due consideration thereto; and while we recognize the evident ability and industry of counsel, disclosed in these two documents and the unmistakable good faith and earnestness with which the insistence of error is made, yet we still adhere to the conclusions reached on original hearing. We have again read with care plaintiff's petition and find no allegations which would justify the conclusion that the suit is primarily one for a rescission of the original contract. In this respect the petition differs from that shown in Hunt County Oil Co. v. Scott, 28 Tex. Civ. App. 213, 67 S. W. 451, cited by appellant. Plaintiff is standing on the contract alleged, and, averring a breach on defendant's part, seeks to recover his damages by reason of said breach. It is true he asks for cancellation of the alleged claim of defendants' for the five cars of the commodity refused by plaintiff because the hulls ottered were not of the quality provided in the contract. He also asks recovery of the amounts paid out, including freight charges and demurrage, on the eight cars delivered and received; but such rights and claims are but incidental to and spring from the contract which he asserts was made by defendants to deliver peanut hulls of a designated quality.

If no delivery had been made and the plaintiff was suing merely for his damages by reason of the failure of defendants to deliver the hulls at the place, within the time, or the quality specified in the contract, it could not be seriously claimed, we think, that the action was not on the contract. The fact that plaintiff had been caused to expend sums of money in his effort to comply with his part of the contract, and that such outlays were caused by defendants' alleged breach, does not change the character of the suit, but merely enlarges the damages he is entitled to recover. If A. agrees to sell and ship to B. a horse, and A. sends a cow instead and B. has no opportunity to discover the substitution until he had paid the draft attached to the bill of lading, B. would have a cause of action on the contract, not only for damages sustained by the failure to ship the horse, but also for the amount paid for the cow. Of course, he would have to tender back the cow before he could recover the amount paid for her, if shown to be of any value; but this the plaintiff in the instant case alleged he did, and that defendants refused the tender. In line with the statement, where a lessee sued the lessor for an eviction from the leased premises, he was held to be entitled to recover, in addition to his other damages, the value of his labor in clearing the land so that he could use it. Carter v. Lacy, 3 Ind. App. 54, 29 N. E. 168. A petition, which shows the making of the contract between plaintiff and defendant, its violation by the defendant, and the damages sustained by plaintiff from the breach, contains the essential elements of a good cause of action ex contractu. 9 Cyc. p. 711 (G); Ry. Co. v. Ross, 62 Tex. 447; Construction Co. v. Eugene, 20 Tex. Civ. App. 601, 50 S. W. 736; Beville v. Rush, 25 S. W. 1022.

The motion for rehearing is overruled.